```
                                        USDC SDNY
                                        DOCUMENT
                                        ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT            DOC #: _____
SOUTHERN DISTRICT OF NEW YORK           DATE FILED: 9/30/13
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------- X
ABDUWALI ABDUKHADIR MUSE,              :
                                       :
                Petitioner,            :       12 Civ. 957 (LAP)
                                       :
            -against-                  :       MEMORANDUM & ORDER
                                       :
UNITED STATES OF AMERICA.              :       Related To:
                                       :       09 Cr. 512 (LAP)
---------------------------------- X

LORETTA A. PRESKA, Chief United States District Judge:

        Pro se Petitioner Abduwali Abdukhadir Muse ("Muse" or

"Petitioner") makes this motion for a writ of habeas corpus

pursuant to 28 U.S.C. § 2255.[1]  Additionally, he moves pursuant

to 18 U.S.C. § 3006A(2)(B) for appointment of counsel in order

to depose his mother and possibly other witnesses to determine

his age.  [09-cr-512, dkt. no. 35.]  Petitioner plead guilty to

one count of hijacking a ship in violation of 18 U.S.C. § 2280;

one count of conspiracy to hijack three ships, in violation of

18 U.S.C. § 2280; one count of hostage taking, in violation of

18 U.S.C. § 1203; one count of conspiracy to engage in hostage

taking, in violation of 18 U.S.C. § 1203; one count of

kidnapping, in violation of 18 U.S.C. § 1201; and one count of

conspiracy to engage in kidnapping, in violation of 18 U.S.C.

---

[1]    Petitioner filed his original habeas petition on February
6, 2012.  [Dkt. No. 1.]  Petitioner filed an "Amended Petition"
on July 2, 2012.  ("Am. Petition") [Dkt. No. 4.]  As the Amended
Petition asserts no additional grounds for relief, the Court
will construe this as a memorandum of law in support of Muse's
Petition for a Writ of Habeas Corpus.

§ 1201.  Petitioner was sentenced to 405 concurrent months'
incarceration.  Petitioner did not appeal his sentence.

In support of his petition, Petitioner raises thirteen
grounds for relief that can be separated into five categories.
First, Muse claims that his trial counsel was ineffective by
failing to advise him that he would be charged with hijacking
three ships, (see Petitioner's Motion to Vacate, Set Aside, or
Correct his Sentence under 18 U.S.C. § 2255 ("Petition") at 4
(Ground 1), 16 (Ground 13)), by failing to argue that the Court
lacked jurisdiction over him because he was a juvenile, (see id.
at 5 (Ground 2)), and by failing to seek disqualification of the
Court based on the Court's demeanor at sentencing, (see id. at 7
(Ground 3)).  Second, Petitioner claims his plea was not
voluntary and knowing because of the improper advice of counsel,
his age, and his mental illness.  (See id. at 8 (Ground 4), 14
(Ground 9).)  Third, Petitioner claims that his sentence was
improper because the Court failed to consider his age as a
mitigating factor.  (See id. at 13 (Ground 5).)  Fourth, Muse
claims that the Court lacked jurisdiction over him because he
was a juvenile at the time of his guilty plea, and was not
provided the statutory rights of juvenile defendants pursuant to
18 U.S.C. §§ 5032, 5033, 5035.  (See id. at 13 (Ground 6), 13-14
(Ground 7), 14 (Ground 8).)  Finally, Petitioner claims that
his post-arrest interrogation was illegal.  (See id. at 16

(Grounds 11, 12).)  For the reasons below, Petitioner's motion
is DENIED in all respects.


I.    BACKGROUND

      In 2009, Muse became involved in the attempted seizure of a
U.S. flagged-ship, the Maersk Alabama.  He and three co-
conspirators boarded the Maersk Alabama, and subsequently held
hostage the Captain on board on a small lifeboat.  When the U.S.
Navy arrived, a three-day period of negotiations took place,
which resulted in the three co-conspirators being shot and
killed, and Muse being taken into custody of the Navy.  On April
20, 2009, Muse was transferred to FBI custody and flown to the
Southern District of New York.  He was presented in magistrate's
court on April 21, 2009 and transferred to the MCC.

      At the defendant's initial appearance before Magistrate
Judge Peck, defense counsel contested the issue of Muse's age
and were granted a request to conduct an age hearing.  (See
Letter from Assistant United States Attorney Brendan R. McGuire
to the Court, Apr. 20, 2012, in Opposition to Petition ("Gov't
Letter"), at 4.)  At this hearing, defense counsel presented the
testimony of a man identified as Muse's father, who represented
that Muse's birthday was November 20, 1993.  (Id.; see also
Sentencing Memorandum of United States, Feb. 9, 2011 [09-cr-512,
dkt. no. 29], Ex. A ("Age Hearing Tr."), at 38-42.)  The

Government presented as its witness Detective Frederick Galloway, who had interviewed Muse the day before the hearing while flying back to the United States.  He represented that he asked Muse his age, Muse laughed and evaded the question.  (Age Hearing Tr. at 29-30.)  Detective Galloway then asked Muse if he is a true Muslim, to which Muse confirmed, and then asked if Muslims lie, which Muse answered, "No.  I'm sorry.  I'm between 18 and 19."  (Id.)  Detective Galloway testified that Muse apologized again for lying later on.  (Id.)  Finally the Government stated that according to their evidence, Muse had given several different ages, from 16 to 26, at different points in time while being interviewed.  (Id. at 27-28.)

Although Magistrate Judge Peck asked several times whether Muse would testify as to his age, assuring defense that he would only ask questions about defendant's age—all in the presence of defendant and the interpreter—Muse did not testify.  (Id. at 43.)  Magistrate Judge Peck determined that Muse should be treated as an adult, based on the credibility of Detective Galloway's testimony, the incredibility of Muse's father's testimony, and the fact that Muse did not directly take the stand to rebut the testimony of what he said to Detective Galloway.  (Id. at 46-48.)  Defense counsel did not appeal Magistrate Judge Peck's decision to the District Court.

On May 18, 2010, Muse pled guilty to Counts 2, 3, 5, 6, 8, and 9 of the superseding indictment, which include charges of hijacking, hostage taking, kidnapping, and conspiracy to commit the same.  Muse pled guilty on May 18, 2010 pursuant to a plea agreement that stipulated a Guidelines Range of 324 to 405 months.  At his plea, Muse was asked by the Court if he was able to understand with the assistance of an interpreter, to which he replied in the affirmative.  (See Gov't Letter, Ex. B ("Plea Tr.") at 3.)  Muse was asked whether he was under the care of a doctor or psychiatrist or currently taking any medication or other substances that might affect his ability to understand what he was doing in court, which he replied in the negative. (See id. at 3-4.)  Muse was asked about his mental state and understanding of the events transpiring in Court, and he responded that his "health is 100 percent."  (Id. at 4.)

The plea agreement bound the defendant to the finding of Magistrate Judge Peck as to his age, as defendant agreed that he would not challenge that finding.  (See Gov't Letter, Ex. A ("Plea Agreement") at 7.)  Muse also agreed to waive any and all challenges to his guilty plea based on his age at the time of the charged conduct or at the time of his guilty plea, including any collateral attack challenging his guilty plea based on his age.  (Id.)  When asked if he understood that he was waiving such a challenge by the Court, Muse first responded "No," but

when asked again after being shown the Somali version of the plea agreement, he responded "Yes" that he did understand that he was waiving "any and all challenges to [his] guilty plea based on [his] age" including any kind of collateral attack challenging his guilty plea.  (Plea Tr. at 12-13.)

Muse was sentenced on February 16, 2011 to 405 months. Muse did not appeal his sentence.


II.   ANALYSIS

A.    Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees the right to the effective assistance of counsel in a criminal proceeding.  See U.S. Const. amend. VI; McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).  In order to prevail on a claim of ineffective assistance of counsel, a petitioner must prove: 1) that counsel's representation fell below an objective standard of reasonableness; and 2) but for counsel's unprofessional errors, the result of the proceeding would have been different.  See Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).  With respect to the first prong of the Strickland test, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 688.  Although this presumption can be overcome, the burden of proving that counsel's performance was

unreasonable under the prevailing professional norms lies with Petitioner.  See Kimmelman v. Morrison, 477 U.S. 365, 381 (1986).  With respect to the second prong of the standard, "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed."  Strickland, 466 U.S. at 697.

      1.    Grounds 1, 13:  Improper Advice as to the Charges

Muse first claims that his attorneys improperly led him to believe that he was pleading guilty to hijacking one ship, even though he was charged with hijacking three ships.  (Petition at 5, 17.)  This proposition is not supported by the record.  The superseding incitement and the plea agreement, both of which Petitioner received in English and in Somali translation, charge Muse with the hijacking of three ships in Count Three, to which Muse pled guilty.  (See (S1) Superseding Indictment [09-cr-512, dkt. no. 17]; Plea Agreement at 1.)  Muse was asked by the Court in the presence of his attorneys whether he received a copy of the superseding indictment and reviewed it with his attorneys, to which he replied in the affirmative.  (Plea Tr. at 4-5).  Muse also represented to the Court that his attorneys had explained the charges to him.  (Id. at 5.)  Muse acknowledged that he received a copy of the plea agreement that had been translated into his native language, that he had reviewed the plea agreement with his attorneys, and that his attorneys had

answered all his questions about the plea agreement.  (Id. at
14-15.)  Finally, Muse signed both the English and translated
versions of the plea agreement.  (Id.)

There is no evidence in the record to suggest that Muse's
attorneys—three experienced Federal Defenders of New York—did
not explain fully the charges against Muse, and Muse had every
opportunity at his plea to alert the Court that he was unable to
understand any portion of the superseding incitement or the plea
agreement.  Even assuming that counsel did misadvise Muse of the
charges, Muse does not argue, and there is no evidence to
suggest, that he would not have pled guilty had he known he was
charged with conspiring to hijack three ships as opposed to one.
Thus, Muse has failed to establish the prejudice component of
the Strickland test.  Mayo v. Henderson, 13 F.3d 528, 534 (2d
Cir. 1994) (petitioner must show that "whether, absent counsel's
deficient performance, there is a reasonable probability the
outcome of the proceeding would have been different").

2.    Ground 2:  Failure to Argue Lack of Jurisdiction
           Due to Petitioner's Age

Next, Muse argues that counsel failed to argue that the
Court lacked jurisdiction over him because he was a juvenile.
(Petition at 6; Am. Petition at 17-20.)  Muse claims that his
counsel was insufficient in arguing his juvenile status at the
age hearing by (1) only contacting his father, and no other

8

family members; (2) failing to investigate his father's

background; (3) failing to put Muse on the stand to testify as

to his own age; and, (4) failing to appeal the magistrate's

decision.  (Am. Petition at 17-20.)

First, Muse has expressly waived his right collaterally to

attack the decision of Magistrate Judge Peck as to his juvenile

status, in addition to "any and all challenges to his guilty

plea based on his age either at the time of the charged conduct

or at the time of the guilty plea," in addition to agreeing "not

to seek to withdraw his guilty plea or to file a direct appeal

or any kind of collateral attack challenging his guilty plea or

conviction based on his age either at the time of the charged

conduct or at the time of the guilty plea."  (Plea Agreement at

7.)  Accordingly, Muse's argument as to his juvenile status is

deemed waived.

Even assuming Muse had not waived his right to attack

Magistrate Judge Peck's determination, the record again belies

his assertions of ineffective assistance of counsel.  Muse's

attorneys immediately contested his status as an adult at the

first appearance Muse made in this Court.  Counsel requested and

was granted an age hearing immediately, wherein counsel sought

out Petitioner's father over the phone so that he could be

interviewed.  (Age Hearing Tr. at 38-42.)  There is no evidence

to suggest that defense counsel had been provided additional

contacts they could have called to testify during that hearing

but failed to.  There is also no evidence to suggest that

Magistrate Judge Peck was even aware of Muse's father's "history

of violent behavior against family and other mental health

issues," let alone that it was a factor in Magistrate Judge

Peck's determination that Muse's father's testimony was not

credible, as Muse argues.  (Am. Petition at 16-17.)

Further, there is evidence that counsel discussed with Muse

whether or not Muse himself should testify as to his own age,

and that counsel did not make that decision unilaterally.  When

Magistrate Judge Peck asked one final time whether Muse would

like to testify on his own behalf, counsel took a moment to

discuss with each other and with Muse and the interpreter, and

then informed Magistrate Judge Peck that Muse would not be

speaking.  (Age Hearing Tr. at 43.)  Again, there was an

interpreter present at these proceedings, and there is no

indication that Muse did not understand what was transpiring.

(See id. at 19-20.)  Additionally, because Magistrate Judge Peck

was provided evidence as to Muse's own inconsistent statements

made to Detective Galloway and others, there is no indication

that had Muse testified that he was 16, the outcome would have

been different.

Finally, counsel's decision not to appeal the decision of

Magistrate Judge Peck was not ineffective.  There is no

indication that the District Court or the Circuit Court would have overturned Magistrate Judge Peck's determination, which was reasonably grounded in the evidence presented to him.   Thus, there is no "reasonable probability that the outcome of the proceeding would have been different," Mayo, 13 F.3d at 534, and, accordingly, Muse has failed to establish ineffective assistance as to his age hearing.

### 3.   Ground 3:  Failure to Seek Disqualification of Judge Based on Demeanor at Sentencing

Muse argues that his counsel was ineffective for failing to seek the recusal of the Court based on the Court's demeanor at sentencing.  (Petition at 8; Am. Petition at 15-16.)  Because Muse was sentenced to 405 months, which was within the Stipulated Guideline Range set forth in his plea agreement, he expressly waived his right to appeal directly or attack collaterally any sentence within or below the Stipulated Guideline Range.  (Plea Agreement at 6.)  Accordingly, Muse's ability to attack his sentence has been waived.

### B.   Grounds 4, 9:  Petitioner's Plea

Muse next argues that his plea was not voluntary and knowing because of his trouble with the English language, his young age, and his mental state at the time of his plea. (Petition at 9, 15; Am. Petition at 10-15.)  Muse submits that his guilty plea was invalid because "his counsel was aware that

he likely suffered from mental defect at the time he entered his plea" and that he was mentally incompetent.  (Am. Petition at 10.)  Muse points to his psychological evaluation done by Dr. Jerome Kroll shortly after his guilty plea.  (Id. at 12-13; id. Ex. C ("Kroll Report").)

Muse has waived his right to attack collaterally his guilty plea, because he failed to raise the issue on direct appeal. United State v. Frady, 456 U.S. 152, 165 (1982).  A defendant who fails to raise an issue of trial court error on direct appeal cannot assert that issue in a habeas motion unless he can show both cause for failing to raise the issue on appeal and prejudice resulting from that error.  Campino v. United States, 968 F.2d 187, 190-91 (2d Cir. 1992).

Muse has failed to establish prejudice, as there is no indication that he was incompetent to plead guilty.  As an initial matter, Dr. Kroll's evaluation recommended that solitary confinement had rendered Muse highly depressed and that Muse should not be held in solitary confinement for the sake of his mental health.  (Kroll Report at 19.)  Dr. Kroll reported that he believed Muse could "most likely survive with sanity and dignity in a general prison setting."  (Id.)  Dr. Kroll never stated that Muse is incompetent to appear in Court and, after reviewing other psychological screening reports done at the MCC,

never reported a belief that Muse was incompetent at his guilty

plea or at any other prior Court appearances.

Additionally, at his plea Muse was asked by the Court if he

felt well enough to understand what was going on, to which he

responded that he "understands what's going on in the courtroom

today," and that his "health is 100 percent."  (Plea Tr. at 4.)

He informed the Court that he was not currently under the care

of a doctor or psychiatrist and that he was not currently under

the influence of any drugs or medication.  (Id. at 3-4.)

According to Dr. Kroll's report of the record of psychiatric

evaluations done at the MCC of Petitioner, these statements were

accurate.  Muse was screened on May 8, 2009 at the MCC,

prescribed Prozac, and then refused to take it.  (Kroll Report

at 15-16.)  He was also screened on May 14 and May 21, 2009, but

no action was taken at that time.  (Id.)  Muse was evaluated by

MCC staff in June 2009, and September 2009.  Dr. Kroll reports

that "Mr. Muse was doing fairly well psychologically in the

general prison setting in the second half of 2009."  (Id. at

17.)  No other evaluations were done between the end of 2009 and

after his guilty plea on May 18, 2010.  Accordingly, Muse was

not currently under the care of a doctor at the time of his

plea, and his most recent evaluation was that he was doing

"fairly well" mentally.

Therefore, Muse has not provided any evidence that his plea was not entered into knowingly and voluntarily based on his mental status or lack of understanding or that the outcome would have been different under different circumstances.  He repeatedly represented to the Court that he understood the proceedings through the assistance of the interpreter, (Plea Tr. at 2-3, 7), that he felt well enough to understand what was going on, (id. at 4), and that he had reviewed the plea agreement in its Somali translation, and understood the consequences of his guilty plea, (id. at 5-22).  Accordingly, Muse's claim that his plea is invalid is denied.

   C.   Ground 5:  Petitioner's Age as Mitigating Factor in

        Sentencing

Muse argues that the Court failed to recognize his youth as a mitigating factor at sentencing.  (Petition at 13.)  Again, because Muse was sentenced to 405 months, which was within the Stipulated Guideline Range set forth in his plea agreement, he expressly waived his right to appeal directly or attack collaterally any sentence within or below the Stipulated Guideline Range.  (Plea Agreement at 6.)  Accordingly, Muse's ability to attack his sentence has been waived.

   D.   Grounds 6, 7, 8:  Petitioner's Status as a Juvenile

Muse argues that his guilty plea and sentence are invalid because he was not afforded the statutory rights available to

14

juveniles, including a transfer hearing pursuant to 18 U.S.C.
§ 5032, advice of rights in a language a juvenile can understand
and notice to his parents pursuant to 18 U.S.C. § 5035, and
detention in a juvenile facility pursuant to 18 U.S.C. § 5035.
(Petition at 13-14.)  As noted in Section II.A.2, supra, Muse
has expressly waived his right to collaterally attack his guilty
plea based on his age either at the time of the charged conduct
or at the time of his guilty plea.  (Plea Agreement at 7.)  Also
noted, supra, Magistrate Judge Peck conducted an age hearing at
Muse's initial appearance, and, after argument from and evidence
presented by both sides, he determined that Muse was an adult.
This determination was not appealed by Muse either to the
District Court or the Court of Appeals.  Further, there is no
evidence in the record to suggest that Magistrate Judge Peck's
determination was not reasonable or was not based on the
evidence before him.  Accordingly, Petitioner's challenge to his
status as a juvenile in his trial proceedings is denied.

     E.    Grounds 11, 12:  Petitioner's Miranda Rights

    Finally, Muse argues that his post-arrest interviews were
conducted in violation of his Miranda and due process rights.
(Petition at 15.)  Muse claims that the police "used trickery"
when arresting him and that he was threatened to state that he
was an adult.  (Id.)  Further, Muse argues that his Miranda
rights were violated because he was a juvenile and did not have

his parents present when being interrogated.  (Id.)  First,

because Muse pled guilty, his post-arrest statements were never

used against him in trial, and thus, habeas relief is not

available to him on this issue.  Lockyer v. Andrade, 538 U.S.

63, 75-76 (2003).  As to Muse's argument that he was a juvenile

at the time of these proceedings, Magistrate Judge Peck's

determination that Muse was an adult remains valid, and thus

Muse cannot argue that his rights were violated by not having

his parents present during interrogation.  Finally, to the

extent that his post-arrest statements as to his age were used

against him, there is no evidence to support Muse's claim that

he was threatened into stating that he was an adult.  Muse had

the opportunity at the age hearing to testify as to his age and

to testify as to any "trickery" or threats made to him to

explain away his prior inconsistent statements.  He did not take

the opportunity to do so.  Accordingly, Muse's claims relating

to his post-arrest interrogations are denied.

   F. Motion for Appointment of Counsel

     Under 18 U.S.C. § 3006A(a)(2), a petitioner for habeas

corpus is not entitled as of right to the appointment of

counsel; however, that statute permits a federal court to

appoint counsel for a financially eligible petitioner when "the

interests of justice so require."  18 U.S.C. § 3006(a)(2). "In

determining whether to grant discretionary appointment of

16

counsel, courts in this circuit have looked to such factors as the petitioner's likelihood of success on the merits, the complexity of the legal issues raised by the petition, and the petitioner's ability to investigate and present the case." De los Rios v. United States, 86 Cr. 279, 1994 WL 502635, at *6 (S.D.N.Y. Sept. 14, 1994) (citing Vaughn v. United States, 647 F. Supp. 826, 827 (S.D.N.Y. 1986)); Shaird v. Scully, 610 F. Supp. 442, 444 (S.D.N.Y. 1985).  Because the Court has determined that Petitioner's habeas motion is meritless, Muse's motion to appoint counsel to depose his mother as to his age is DENIED as moot.


    III. CONCLUSION

    For the foregoing reasons, Petitioner's 28 U.S.C. § 2255 motion for habeas relief [dkt. no. 1] is DENIED.  Petitioner's motion to appoint counsel [09-cr-512, dkt. no. 35] is DENIED as moot.


SO ORDERED.

Dated: New York, New York
       September 30, 2013

_Loretta A. Presky_
_____
UNITED STATES DISTRICT JUDGE

17